This first case is 4-14-0839, Graham v. Stone, and for the appellant, Attorney Curley, and for the appellee, Attorney Hamilton. Good morning, counsel. All right, Mr. Curley, are you ready to proceed? Thank you. May it please the court and counsel, as you know, we're here because of a discovery dispute over disclosure of certain information. Interesting thing about this case is this court could actually resolve this issue without ever even addressing the privilege question, because it's simply not discoverable, it's not relevant, nor would it lead to the discovery of relevant information. And the support for that can actually be found in the appellee's brief, Witherell 2. In the case of Witherell v. Weimer, the Supreme Court, they got to this attack case twice. In their first case, in the first round, the court made a suggestion that when you have an equitable estoppel claim, the statute of limitations defense is simply not available. It's counterintuitive to say that you can raise the statute of limitations defense when the plaintiff is saying you're stopped from raising a defense due to your conduct. In response to that, the defense raised Witherell 2. The Supreme Court got that case back after trial for a second time, and they said a couple of things. They said, well, yeah, in Witherell 1, people thought we were saying that you could never possibly raise the statute of limitations defense in an estoppel claim, but what they did allow there was an instruction to the jury about what the statute of limitations was on an estoppel claim. They said something that's extremely important and really cuts to the heart of our case here today. And this was not mere dicta. This was, I think, central to their decision. They said, in that case, regardless of what the plaintiff may have heard about the effects of drugs she was taking could have had on her, we believe that in this context she was entitled to rely on her physician's opinion, and the defendant cannot avoid estoppel by pointing to other sources the plaintiff could have consulted for information. All right, so let's break that down. In that particular case, the plaintiff was taking a drug. Doctors kept telling her, don't worry, this drug's not causing your problem. You've got something else wrong. It's not the drug that was the birth control pill, orthonobin. Her doctors kept assuring her, don't worry, it's fine. Didn't Stone, in this case, deny that he made any misrepresentations to Graham? Well, I think in his complaint he has denied the central allegations. At this stage, isn't that a factual dispute as opposed to what the evidence was in Witherall 2? That is, there was evidence of that affirmatively for the jury, wasn't there? Well, there was. I think in that case the jury heard evidence that the plaintiff had heard from other wives, other women, that this drug could cause a problem. What was the continuing treatment aspect of this in the medical malpractice cases, which is why the court has held that the medical malpractice claims, the statute of limitations, people will be stopped from raising that because they're continuing the treatment. What if there was no continued equivalent of legal representation in this case? Then there wouldn't be any application with it? I respectfully would disagree. I don't think that's what Witherall said. I don't think it was the continuing course of treatment doctrine that was central to their decision at all. I think they were simply saying the fact that other people told this lady there could be a problem, I think even a chiropractor told her that there could be a problem, the court said, look, that doesn't matter. Estoppel is a claim in which you're saying, hey, I relied on you. You were my doctor or you were my lawyer. You represented me throughout this. Nobody else did. There was no concurrent representation. There was no reliance on anyone other than these doctors. There was a continuous treatment, however. There was no dispute about that in Witherall. Wasn't that the case? Well, the doctors treated her for a number of years. Well, the court talked about the ongoing misrepresentations that basically impeded her ability to discover that I have a legitimate injury here in the claim. Correct? Well, no, she could have gone to other sources to get the information. No, I'm talking about what the court stated in the case. They focused on the fact that the doctor engaged in continued misrepresentations. Isn't that correct? Yes, that's important. If there were no continued representations, misrepresentations or representations of any kind with regard to this case, stone making to your client, then there would be no application of Witherall, would there? True. True. Well, isn't that a factual matter to be resolved? In fact, at this point, hasn't he denied it? He's denied it. That's also different from Witherall. Yeah, he's denied it. However, Witherall did say, it doesn't matter what you could have learned from a third party. We're not talking about what could have. What was important, as Justice Silverwhite pointed out, is this was an ongoing circumstance. So what you could have learned or not from the third party doesn't matter as long as you were being continued to be treated by Dr. Witherall. Yes. Assume for the moment that the trier of fact in this case decided that stone had no further involvement as counsel for your client, then what would be the application of Witherall? Well, he continued through the appellate process. I mean, that's a fact. That's an admitted fact. So we know that there was continuing representation for a period of years. So I think Witherall does apply because there was continuing representations, legal representation by stone. So I think Witherall does apply. Now, let's say that after the arbitrator in this case said, your case is not arbitrable, and then Mr. Graham decided, I'm going to go get another lawyer. You know, stone lost this case for me at arbitration, so I'm going to go hire somebody else to take it from here. That would be a different set of circumstances. Mr. Curley, I may be missing something here, but it is my understanding that the sole issue decided by the trial court was whether or not your client should answer an interrogatory that requested the date that any consultation had been made with an attorney and then the name and address of that attorney or attorneys. Your client refused. There was a motion to compel and it went from there to the contempt finding. Isn't the only issue on appeal whether or not your client should answer that interrogatory? That is the question on appeal. Okay. So getting to the privilege, the attorney-client privilege, does the interrogatory seek privileged communications? I believe it does. Okay. So isn't that the only issue that we should be determining here? Ultimately, yes. I mean, that is the issue. That is the issue before this court. Does Mr. Graham have to say, I consulted a lawyer on a particular date and we discussed these topics that they've asked about? In other words, they're wanting to know who did you talk to about your case, Stone's representation, Stone's conduct. So they're asking more than just did you see a lawyer, it's who did you talk to about these things? Yeah. Well, okay. And I think there's been an acknowledgment made in the Applease brief that once this is answered, they certainly are going to go to the next step. So we can't turn a blind eye, I suppose, to that. But the only issue on appeal here is whether or not this is privileged attorney-client communication. So is it communication between an attorney and a client, that which is sought here? Absolutely. And how so? All right. Let's take a scenario whereby somebody comes to me, John Doe. He's got a legal issue. And he comes to me and he wants legal advice about any topic. Doesn't matter. He tells me the facts and he says, you know, now based on what I've told you, let me ask you, what do you think? And I give him an answer, whatever the answer might be. Now, am I supposed to disclose to anybody the fact that he came to see me and talked about that topic? What if a friend of... You're talking about your duty as an attorney. Right. Well, they're not talking about that in this interrogatory. They're asking for information regarding any consultations. Let's take, for instance, let's say your client sought to meet with an attorney. And the interrogatory simply asked, have you ever sought to consult with an attorney? The date and who did you seek to consult with? Now, there may not even have been a meeting between the client and the attorney. So obviously there would be no attorney-client privilege at stake there. This seems to be just one step removed from that. Does that make a difference that there actually was a subsequent meeting and subsequent communications? It matters if there were subsequent communications, I think. But they're not asking about what those communications were here. Oh, we're splitting hairs here. Okay. When somebody comes in and talks to me about a subject, now, does that person have to disclose that and say, I talked to a lawyer about a subject, a particular issue, a specific issue? Is that really any different than saying, and here's what we said to each other? I think it's very different. Okay. Now, they're saying it's our intention to go further and ask those questions. We want to know not only did you talk to somebody about this issue, but they've said, as you pointed out, Justice Harris, they're going to go further and they're going to get into the communications. But we're not there yet, and that's not, not to be rude, our problem yet. True. But let's say that this court finds that it's relevant whether or not he talked to somebody about this subject. Now, where does that put the plaintiff? What's the problem with that? Well, it's this. I think if there's evidence at trial that he spoke to a lawyer about this subject, but trial court says, but you can't get into what the communications are. And I know I'm jumping ahead, but you have to think about this because it's going to happen. What if the court says, however, Graham, you don't have to talk about the details of the discussion. The only thing that's relevant here or the only thing that's discoverable is whether you met with a lawyer. You don't have to go any further. Okay, so they go to trial and they say, ladies and gentlemen of the jury, there's evidence this guy met with a lawyer on this date to discuss this subject. Where does that put the plaintiff? Well, how about this? With this information, if this is answered, it would allow the other side to depose your client and ask, why did you go seek counsel? That wouldn't invade the attorney-client privilege at that point. So certainly it's not a foregone conclusion that the ultimate end point is to invade the attorney-client privilege there. It could simply establish a point from which the other side could ask questions.  And that then would get to the heart of the discovery rule issue. Well, if they were to ask why, again, if that were to get in front of the jury, it forces the plaintiff to have to waive the privilege. Because let's say the jury hears evidence that, yes, I saw a lawyer on this date. Here's why. Okay, what does that do to a jury if they don't hear more? They're thinking, hmm, there's something he's not telling us. He saw a lawyer, so it lets the jury speculate about what happened during the meeting, unless the plaintiff gives full disclosure of everything that was discussed. So in essence, he's forced into a position of spilling his guts, so to speak, because the jury's going to hear that he saw a lawyer. And they're going to speculate. They're going to say, hmm, there's something going on here. What's he not telling us? It is an issue that the plaintiff has put into play here with the allegation. He's alleged it. He has to prove it. So the bare allegation that I didn't know about this until X day, that's certainly something that's at issue. It has to be explored. It seems to me that we're getting ahead of ourselves here with this particular interrogatory. It's not getting to that privileged communication. Well, you bring up a good point, and that is at issue. You said, well, the plaintiff put this at issue, and he really hasn't. And I think that's the whole, or the disconnect in this case. When did the legal malpractice claim get filed? Was that August 2011? Yes. And when, according to you, was the statute of limitations applicable in this case? When this court ruled against Jim Graham in the appeal of the dismissal of his employment case. That's when it started. When did that occur? That would have been August the, I want to say, 17th of 09, I believe. I can tell you specifically. It's in my statement of facts. And that, by the way, was going to be one of my other arguments here. It's simply, if there's no statute of limitations issue at all, which I don't think there is, then this is definitely irrelevant. What did the trial court say about the statute of limitations issue? Well, what we did was initially, the initial complaint did not plead estoppel. That got dismissed. And then I repled. Well, if the initial complaint got dismissed, the trial court must have thought that the statute of limitations ran. Yes. What was the point at which the trial court thought the statute of limitations, the time began? I don't recall the court specifically articulating that or putting that in an order. Well, assuming the court. I mean, I know there's a dismissal order, but I don't recall specifically what the judge wrote in it. Well, assuming for the moment that there's a two-year statute of limitations and that the trial court was correct in deciding that the point at which the alleged malpractice occurred was more than two years before when you filed suit in August 2011, then your argument is essentially the discovery rule prevents the application of the statute of limitations because your client didn't know and shouldn't have been chargeable with knowing that legal malpractice had occurred because, as we discussed earlier perhaps, of the continuing representation by Mr. Stone or for whatever other reason. The point of all this is when you assert the discovery rule, you open up everything. That is, I'm not sure there is any privilege that continues to apply if your client, assuming that the trial court was correct in August 2011, is the date at which the legal malpractice statute, two-year statute of limitations, runs. If you're trying to argue it shouldn't because of whatever the discovery rule, then I think all aspects of what your client did, thought, and with whom he spoke is open to discovery and there is no privilege because you're kind of like the defendant in a criminal case who is asserting my client, my lawyer, a trial was ineffective, but by God I'm not going to tell you anything we talked about. That doesn't work either. Counsel, in your amended complaint you indicate that your client was unaware of this until October of 2009, correct? Correct. And basically you're saying that so that's when the clock should have started running. That's when the clock starts. And that's a dispute. Well, actually I don't think it really is because I think the Romano case says, look, until the appeals are done the clock doesn't start to run. Why would it? Because damages are not certain until the appeals are exhausted. Is there a difference between an injury and damages? Yes. In the statute of limitations analysis, what the courts have said for a long time, if you have damages that are certain, even if the amount is unknown, the clock starts to run. But until the appeals were done, damages here were not certain. By definition, certain means unquestionable, inevitable. Well, but Justice Holder Wright's point is a good one. It's not a question of whether damages are certain, it's whether you have a cause of action, which is at issue in determining whether the statute of limitations has started to run. Right. When does the cause of action arise? It arises. Why should it arise in October 2009 and not earlier when your client had reason to believe that, according to his allegations, Mr. Stone dropped the ball? Why wouldn't that be the case? If I understand your question correctly, it's why would this statute of limitations start to run at the end of the appeal? Yeah, why didn't it start to run earlier as soon as your client had learned that, according to his claim, Stone dropped the ball? Well, because Stone told Graham, don't worry, we're going to get this overturned. And there's no damages until the appeals are done. It's speculative. But that's disputed, whether or not he made those misrepresentations. Well, that wouldn't affect the statute of limitations. Well, it would affect whether or not your client reasonably relied on this advice that he was supposedly getting. It might, but that doesn't change the statute of limitations clock. It doesn't start to run until the appeal is done, with or without reliance. In other words, I'm not saying the clock started running at the end of the appeal because of reliance. I'm saying that's just when it starts, no matter what, whether it's a reliance case or not. That's when the clock starts to run. All right. Thank you, Mr. Turley. Thank you. You'll have time in rebuttal. Ms. Hamilton? And Ms. Hamilton, I'm going to interrupt you before you even start. On that last point, why is it relevant, or how is it relevant, the issue of equitable estoppel and when the statute of limitations actually ran in this case, when all we're dealing with is a discovery issue and the summary judgment motion has not yet been decided? Certainly, Judge. May I please the Court on getting directly to that issue? I think the Illinois Supreme Court Rule 201, which sets forth what is considered relevant evidence, it's if it relates to any claim or defense. And in this situation, whether the plaintiff consulted with another attorney about either, A, my client's representation of him, or the underlying termination proceedings, directly goes to both our statute of limitations defenses to the discovery rule, when he knew or reasonably should have known of his cause of action against my client. But it also now goes to the defense which has been raised by the plaintiff, saying that we should be equitably estopped from ever even raising the statute of limitations defense. In order, as Your Honor pointed out, in order to succeed on an equitable estoppel claim, you have to prove that you're, well, five or six elements actually, as we set forth in our brief, but that the reliance was reasonable. And that the defendant not only made representations, but that the plaintiff actually did rely on those representations. And in this case, the plaintiff did actually consult with other attorneys to get legal advice of, hey, you know, do you think I'm really going to win on this if these alleged misrepresentations were made? Which, again, we contend they were not. But if the plaintiff did meet with someone else, saying, hey, I'm being told that, you know, we're going to win, it's a guarantee, no problem on the appeal. If he met with someone else, that goes directly to that element of, did you actually rely on the misrepresentations? Or did you go and seek out someone else to determine whether or not that was, you know, really the case? Well, I understand addressing it from the relevant standpoint. But it seems like both sides, I was intrigued by this in their briefs, briefed it as if this issue of equitable estoppel had been decided via summary judgment. It's simply in broad, general terms, is it relevant? And if the interrogatory seeks relevant material, then we get to the next step, is it privileged? Absolutely. And I think it is relevant because, again, the rules of evidence, 401, it's anything that has any tendency to make any fact of consequence more or less probable than it would be without the evidence. It's very, very broad. And especially in this juncture where, as you mentioned, we haven't even briefed the summary judgment motion on equitable estoppel. Now, obviously, we contend that because there's a dispute of material fact as to whether or not any misrepresentations were made, we contend that summary judgment would be inappropriate. Let me ask this, counsel. I think Justice Harris is getting to a question which I have as well. The question is, it's not so much is it relevant, but is it an issue we need to answer in this appeal? In other words, the issue before us in this appeal is whether or not the trial court was correct in directing that the interrogatory be answered by Mr. Graham regarding which lawyers he may have consulted with concerning the underlying claim. The trial court said you have to answer that. The issue before us is a claim that's privileged. If we agree with the trial court, do we need to say anything other than the trial court was correct? Well, I would agree with you on that. I think that this is – that's really all that's before this court is did the trial court, you know, Or for that matter, if we think the trial – this is a matter of – the privilege covers this far. Do we need to say anything other than the trial court was wrong? This is a privileged communication at this stage of the proceeding? At this stage, I don't think anything else is before the court. We went ahead and addressed further, just again looking ahead and sort of in the interest of expediency in judicial economy. First of all, I don't think the privilege covers this type of communication at all. As Your Honors pointed out earlier, the interrogatory seeks for dates and names and, you know, the subject matter, not the content of the communications. And I think the Second District went into detail about this and the limitations of what does the privilege cover versus not in the LAMA case that we cited. Now, in LAMA, it was a very, very similar situation. LAMA is – you're getting to the next interrogatory that isn't at issue here, which is requesting information about those communications, the substance of them. You're not there yet. And so we're really not advancing the litigation here and puts us in a position, if we do address solely the issue on appeal, we're not addressing that next interrogatory or discovery question that you're leading to. That would put us in the role of having to issue an advisory opinion. Don't you agree? I would agree. I think that right now the issue before the court is, you know, is the dates and the names of the attorneys consulted with regard to these specific subjects. Is that privilege or not? And I don't think it is. I do think it's relevant as evidenced by the claim that the discovery rule should be told by some sort of equitable estoppel. You filed a motion to dismiss based upon the statute of limitations? We did. And what is your position as to when the statute began to run? In answering that question, I'd like you to consider or inform us how that relates to when the civil code talks about when a medical malpractice claim must be filed. Well, there are some very similar instances with medical malpractice and legal malpractice cases. Although I would like to point out that there is no continuous representation rule in Illinois. That is one key distinction between legal malpractice cases and medical malpractice cases. And I'm sorry. I meant legal malpractice. Oh, I'm sorry. It came out of my mouth, but I meant legal. Thank you. Okay. With regard to when the statute of limitations began running in this case, we contended it began running on January 15, 2010, which is January 15, 2008 is when the arbitration award came out and said, your claim is no longer arbitrable because you failed the process. 2010 is when the statute ended. Right. It expired. I'm sorry. My question was when did the period begin? January of 2008? January 15, 2008. And what happened then? That was the date that the arbitration award came out and said, sorry, your claim is not arbitrable because you failed to follow the Step 3, Step 4 process. Okay. And does the record show the defendant or the plaintiff personally knew about that? Yes, Judge. Actually, this was a two-day arbitration in May of 2007. The plaintiff was in attendance at the arbitration both days. It was raised. It was argued. Additionally, and I believe I have it in the record as well, I think it's C-309, Judge. There's some emails between the plaintiff and the defendant. There are dozens more emails in discovery that aren't in the record. But this is a plaintiff who was very, very involved in the litigation, the underlying claim. Specifically in this email, which is, again, if I can draw an analogy to Lama, one of the things the court, the Second District, focused on in Lama was the fact that the plaintiff, several days after her surgery, the surgery in which they determined that was when the negligent act occurred, within a few days she requested all of her medical records. And then it was later found out that she had asked her husband to take those medical records to consult with an attorney. And that was the affidavit that they sought to have stricken was an affidavit from an attorney saying, yep, I met with the plaintiff's husband on this date and he brought the medical records. That's it. The plaintiff moved to strike that affidavit saying it was privileged. The Second District said, number one, no, that's not privileged information. The date you met and the fact that your husband brought medical records, not privileged, number one. Number two, you actually put that at issue because now that you're raising an equitable estoppel or trying to beat the statute of limitations, you've now put those communications at issue. And the fact that you requested your medical records a couple days after the surgery seems to us to indicate that you then taking those medical records to an attorney is something. Justices, on record number 309, there's an email from the plaintiff to the defendant requesting a copy of his case file. And this is on September 23, 2008. Now, this is a few days after the arbitration award was confirmed. So even if you were to believe that the plaintiff didn't know or had reason to know that he was damaged the date the claim was determined to be non-arbitrable, when the circuit court confirmed that on September 16, 2008, within a few days, the plaintiff is going, I'd like my whole file, please. And that's something that is very, very similar to Lum, and I don't think that's something that we can ignore because this is a plaintiff who was very actively involved in the underlying litigation. The trial court thought that the trial court expressed any views as to when the statute of limitations would run absent some discovery rule application. My recollection, Justice, is that the trial court expressed that it certainly had run prior to August 17, which is when the original claim was filed. So the question is, the discovery rule, does it apply here so as to defeat the normal statute of limitations? Absent any additional allegations from the plaintiff, the trial court said no. There's the continuous treatment doctrine in medical malpractice. Is there a similar one with regard to legal malpractice? Has Illinois addressed that? Illinois has addressed that, Judge. And Serafin v. Seath, which is a case we cited in our brief, it's 284-ILAF-3D-577. It's a 1996 case out of the First District. There's actually a paragraph here, if I may quote from it directly. The court says, Serafin also relies on Witt v. Jones and Jones' law offices. In Witt, the plaintiff filed a legal malpractice action seeking damages against a law firm for negligently drafting a will. The plaintiff argued that the statute of limitations was told by a, quote, continuous representation rule. And Allen analogized this rule to the continuous course of treatment doctrine discussed in Cunningham. The plaintiffs argued that the continuous representation rule was applicable to legal malpractice claims against the attorney who continued to represent a client, and the statute of limitations on the malpractice claim should not have run until the attorney ceased to represent the client. The court rejected this argument because there is no continuous representation rule in Illinois. The court stated, not only have we failed to find a case adopting the continuous representation rule in Illinois, but our Supreme Court's rejection of the continuous course of treatment doctrine in Cunningham suggests the court is not ready to adopt a continuous representation rule with respect to legal malpractice cases. Cunningham was changed, wasn't it? Judge, I don't have that case in front of me, so I can't speak intelligently about it. I'd be happy to submit a memo. But I do know that with regard to legal malpractice cases, there is no current continuous representation rule. Since you raised the llama, and that really gets to the interrogatory that hasn't been asked yet, but I do want to just point out that it's been pretty heavily criticized, or at least the ad issue waiver rule that it incorporates in its analysis has been, and the Second District itself that issued the llama decision distanced itself in Enray Estate of Wright just three years later. So at the risk of going down this path of talking about the ad issue waiver, do you believe that that is the rule of law that this court should follow? I believe that this court should absolutely follow the path set forth in llama. And with regard to Enray Estate of Wright, I think the Second District was attempting to explain that there's a key distinction in the situations where you apply the ad issue waiver and where you don't. Apply the what waiver? The ad issue waiver. Oh, okay, go ahead. In llama, which has facts very, very similar to this case I've discussed a little bit with the medical malpractice claim, you know, seeking an attorney, bringing the medical records, et cetera, et cetera. In Enray Estate of Wright, the Second District needed to clarify when an ad issue waiver was really appropriate. In Enray Estate of Wright, it was actually a probate action where there were siblings disputing whether or not a trust amendment was proper or not, and it involved whether an attorney should be disqualified from representing the petitioner because that same attorney had actually represented the deceased individual. Now, without getting into too many of the underlying facts and whatnot, I think what the Second District was trying to say is, you can't claim an ad issue waiver simply because I'm filing a breach of contract claim, and then say, oh, well, then your conversations with your attorney must be ad issue because your intentions are now relevant to construing this contract. And that's really what Enray Estate of Wright was. They were trying to breach the privilege between the attorney and the deceased individual to try and ascertain or somehow divine her intentions when the contract provision was drafted. And so an adverse party was seeking to, okay, I want to get into all that because then it might help me in my breach of contract claim. The Second District said, no, no, no. That is not what an ad issue waiver is designed to do. And I actually think that when Enray Estate of Wright cited Justice Baumann's dissent in the Lama case, she specifically suggested that the rule should be that the ad issue waiver applies when the litigant directly puts the attorney's advice ad issue in the litigation. That was not present in Enray Estate of Wright because there was a contract claim and they're trying to get into discussions about how should we frame this contract. Whereas in Lama, and in this case, you have a situation where the plaintiff has made allegations that the defendant gave him advice, i.e., don't worry, we're going to succeed on appeal, everything's going to be okay, so that he can then claim equitable estoppel. And I think that is exactly why the ad issue waiver is in play here because otherwise you're essentially tying the hands of a defendant attorney who, how are you supposed to then determine whether or not, A, the plaintiff actually relied on the alleged misrepresentations, whether that reliance was reasonable, or how could you ever really attempt to utilize the statute of limitations as a defense in your claim if you're not allowed to then attack it from the sense of, wait, the discovery rule should not hold, the equitable estoppel document should not hold, the statute of limitations. You were there, you heard what the arbitrator said, saying this claim is not arbitrable because you did not follow the steps. Then when the circuit court then affirms it and says, nope, we're confirming the award, that's it, you're done. I think right there, the plaintiff has put all these things at issue and that's why we're entitled to the information. All right, thank you, Ms. Hamilton. Thank you very much. Mr. Farrelly, rebuttal. Thank you. What the defendant is trying to do in this case is exactly what the right court was cautioning against. This is why they didn't follow Lama. This is why they said Lama's not good. Criticisms of Lama, there have never been a lot of cases that have criticized it. One of which said advice is not an issue merely because it is relevant and does not necessarily become an issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. This is what they're trying to do. They're trying to say, forget right, let's go with Lama, even though the court that decided Lama later decided that. But wouldn't it be a fundamental miscarriage of justice if, in fact, your claim is the discovery rule prohibits Stone from asserting the statute of limitations which, let's assume, would otherwise have run, and you claim that, well, we relied on Stone's representation. If, in fact, the evidence were to show that your client had consulted with a lawyer about this very subject and was told, yeah, I think Stone dropped the ball and you should sue him? I don't think it would make any difference. It wouldn't make any difference as far as whether or not he should have filed the lawsuit within the time specified by the statute? I don't think it makes a bit of difference, and here's why. An estoppel claim puts at issue one thing primarily. I mean, there are elements, but the big issue is, did Graham rely on Stone? We don't care whether he knew or should have known that he had a cause of action? Isn't that what the discovery rule says? So you're saying that even if he knew or should have known, with another lawyer who said, yeah, you should sue Stone, if he still had some kind of a professional relationship with Stone and Stone said, oh, I did everything okay, then the statute of limitations doesn't run? That's right. What case stands for that? Every case that talks about estoppel. Estoppel is reliance on a particular individual. You were my lawyer. I relied on you. You told me A, B, C, and D. I believed you. I trust you. I trust you like I trust my doctor when I go to the doctor. If you tell me this, I'm going to rely on you, and if I do, my reliance on you is the only thing that matters. What about Ms. Hamilton's point that there is no equivalent to the continuous treatment doctrine that there is for medical services regarding legal services? Well, are you asking me if there is such a doctrine? Yes. Well, she asserted there isn't. What case stands for the proposition there is? I don't have a site for you. I'd be glad to submit a supplemental memo on that subject. Well, isn't that pretty important? I mean, after all, if there isn't, then the argument you just made has no basis, does it? Well, we are alleging that all the way up until the end of the appeal, that those representations continue, and if you look at the Estoppel cases, there are continuing representations made for years or months, depending on the time. So Estoppel is, I relied on you. It doesn't matter what other people tell me. I don't care. Graham could have gone to 5, 10, 20 lawyers for advice. His claim is not I relied on those lawyers that I consulted. My claim is, Stone, you were my lawyer. You were the man. You were the guy that I relied on to lead me through this. You were the person who was getting paid to do this job. I relied on you. So the question is, can Graham prove that Stone made representations to him? And can he say I relied on that? That's all that matters. It is wholly irrelevant in an Estoppel case what other people said. Graham has not put in issue any discussions with any other lawyers. It simply doesn't matter. Witherell says it doesn't matter. These other sources don't matter. And so for that reason alone, this is simply not a question that Graham has to answer. Thank you. Thank you both. A written decision shall issue. Thank you.